ACCEPTED
03-14-00704-CV
5258405
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/12/2015 9:29:22 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00704-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/12/2015 9:29:22 PM
JEFFREY D. KYLE
Clerk

IN THE
COURT OF APPEALS
OF THE THIRD SUPREME JUDICIAL CIRCUIT

**2004 Dodge Ram 1500 TX LP#CPL1988
and 2000 Buick TX LP CV1N8187**

**v.**

**The State of Texas**

## APPELLANT'S REPLY BRIEF

Appeal from the 20th Judicial District Court
Milam County, Texas
Trial Court Cause No. CV36,279

**LAW OFFICE OF BENTON ROSS WATSON**
120 E. 1st Street
P.O. Box 1000
Cameron, Texas 76520
(254) 307-8181
(254) 231-0212—Facsimile
ross@texastopdefense.com
State Bar No. 24077591

**ORAL ARGUMENT REQUESTED**

## NAMES OF THE PARTIES TO THE FINAL JUDGMENT

### STATE OF TEXAS

The Honorable W.W. "Bill" Torrey
Milam County District Attorney
204 N. Central.
Cameron, Texas 76520

### APPELLANT'S COUNSEL

Benton Ross Watson
120 E. 1st Street
P.O. Box 1000
Cameron, Texas 76520

### TRIAL COURT JUDGE

The Honorable John Youngblood
20th District Court Judge
102 S. Fannin Ave., 2nd Floor
Cameron, Texas 76520

## TABLE OF CONTENTS

NAMES OF THE PARTIES TO THE FINAL JUDGMENT ....I

TABLE OF CONTENTS............................................................II

INDEX OF AUTHORITIES.....................................................IV

REQUEST FOR ORAL ARGUMENT ...................................IX

STATEMENT OF THE CASE................................................IX

ISSUES PRESENTED .............................................................. X

STATEMENT OF FACTS ......................................................... 1

SUMMARY OF REPLY POINTS ........................................... 6

I. REPLY POINTS................................................................... 7

A. THE STATE CONTINUES TO IGNORE RULES
REGARDING SERVICE. ..................................................... 7

1. FILING AN ANSWER DOES NOT WAIVE SERVICE OF PROCESS FOR
PURPOSES OF THE STATUTE OF LIMITATIONS DEFENSE. ............ 8

2. THE STATE WAS NOT DILIGENT BECAUSE IT WAS
UNQUESTIONABLY AWARE THAT MRS. ALCORN REQUIRED
SERVICE BY CITATION, ITS ACTIONS SPEAK LOUDER THAN
WORDS, AND, EVEN THEN, ITS WORDS ARE TOO LATE............. 10

a. *The State knew Mrs. Alcorn was entitled to service by
citation.............................................................................. 11*

b. *The State failed to show diligence because it offered no
explanation....................................................................... 13*

B. THE STATE'S EVIDENCE IS NOT COMPETENT FOR
SUMMARY JUDGMENT. ................................................ 17

1. THE STATE DID NOT CONCLUSIVELY PROVE PROBABLE CAUSE
BECAUSE ONLY UNIDENTIFIED DECLARANTS, LACKING
QUALIFICATIONS AND SUPPORT BY INDEPENDENT
CORROBORATION, KNEW THE DETERMINATIVE FACTS............ 18

2. EXISTENCE OF PROBABLE CAUSE TO BELIEVE PROPERTY IS
CONTRABAND DOES NOT EQUALLY PROVE THAT THE PROPERTY
IS, IN FACT, CONTRABAND. .................................................. 20

C. *AMRANI-KHALDI* IS NOT 'WELL-SETTLED', IS
CONTRARY TO LAW, AND OVERRULING IT
WOULD ONLY LEVEL THE PLAYING FIELD. ........... 22

1. TEXAS LAW DOES NOT SUPPORT *AMRANI-KHALDI*'S RULE BECAUSE NO PERSON INCURRED LIABILITY, THERE IS NO LIABILITY, AND MRS. ALCORN'S COMMUNITY PROPERTY CANNOT BE FORFEITED MERELY DUE TO THE ACT OF A SPOUSE…... .................................................................... 24

2. SPOUSES SHOULD BE ABLE TO USE AVAILABLE STATUTORY PROTECTIONS BECAUSE DOING SO IS CONSISTENT WITH LAW, PREVENTS INEQUITABLE RESULTS, AND ONLY LEVELS THE PLAYING FIELD. .................................................................... 27

a. *Spouses cannot be barred from using available statutory remedies.* .......................................................................... 27

b. *Spouses should be able to use innocent owner defenses in order to prevent inequitable results; and using such defenses would, at most, only give spouses the same advantages as other claimants.* ............................................ 28

D. THE STATE STARTS AND ENDS WITH FACTS ENTIRELY ABSENT FROM THE RECORD, AND COMPLETELY IGNORES PROBLEMS WITH ITS MOTION AND THE TRIAL COURT'S JUDGMENT..... 30

1. NO EVIDENCE OF DRUG CONVICTION, PROBATION, OR AMOUNT OF DRUGS EXISTS TO ANALYZE PROBABLE CAUSE, CONTRABAND, OR EIGHTH AMENDMENT LAW................................................. 30

2. MRS. ALCORN DID NOT PLEAD AFFIRMATIVE DEFENSES IN BAD FAITH................................................................................... 31

3. THE STATE AVOIDS WHY WE ARE HERE. ................................ 31

III. PRAYER ................................................................................ 32

CERTIFICATE OF SERVICE ................................................... 32

CERTIFICATE OF COMPLIANCE.......................................... 33

## INDEX OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Austin v. United States*,
   509 U.S. 602 (1993)..........................................................passim
*Bennis v. Michigan*,
   516 U.S. 442 (1996)................................................................ 27
*United States v. Ward*,
   448 U.S. 242 (1980)................................................................ 25


**TEXAS SUPREME COURT CASES**

*Baker v. Monsanto Co.*,
   111 S.W.3d 158 (Tex. 2003)...................................................... 9
*Caldwell v. Barnes*,
   154 S.W.3d 93 (Tex. 2004)...................................................... 10
*Fairfield Ins. Co. v. Stephens Martin Paving, LP*,
   246 S.W.3d 653 (Tex. 2008).................................................... 23
*Kerlin v. Arias*,
   274 S.W.3d 666 (Tex. 2008).................................................... 17
*Kulubis v. Tex. Farm Bureau*,
   706 S.W.2d 953 (Tex. 1986)............................................... 22, 23
*Proulx v. Wells*,
   235 S.W.3d 213 (Tex. 2007).................................................... 14
*Ross v. Nat'l Ctr. for the Empl. of the Disabled*,
   197 S.W.3d 795 (Tex. 2006).................................................... 10
*State v. $90,235.00*, 390,
   S.W.3d 289 (Tex. 2013)...................................................... 17, 20
*Tedder v. Gardner Aldrich, LLP*,
   421 S.W.3d 651 (Tex. 2013)............................................... 24, 25
*Texas Farmers Ins. Co. v. Murphy*,
   996 S.W.2d 873 (Tex. 1999).................................................... 23


**TEXAS COURT OF CRIMINAL APPEALS CASES**

*Davis v. State*,
   202 S.W.3d 149 (Tex. Crim. App. 2006)................................. 20
*Flores v. State*,

319 S.W.3d 697 (Tex. Crim. App. 2010)................................ 20

## TEXAS APPELLATE COURT CASES

*$24,156.00 v. State*,
   247 S.W.3d 739 (Tex. App.—Texarkana 2008, no pet.) ........... 9
*$27,920.00 v. State*,
   37 S.W.3d 533 (Tex. App.—Texarkana 2001) .......................... 8
*$6453.00 v. State*,
   63 S.W.3d 533 (Tex. App.—Waco 2001, no pet.).................... 9
*Amrani-Khaldi v. State*,
   575 S.W.2d 667 (Tex. Civ. App.—Corpus Christi 1978, no
   writ)................................................................................. III, 22
*Belleza-Gonzalez v. Villa*,
   57 S.W.3d 8 (Tex. App.—Houston 2001, no pet.) .................. 15
Bochas v. State,
   951 S.W.2d 64 (Tex. App.—Corpus Christi 1997, no writ).... 22
*Davis v. State*,
   989 S.W.2d 859 (Tex. App.—Austin [3rd Dist.] 1999, pet.
   ref'd). ..................................................................................... 20
*Elardo v. State*,
   163 S.W.3d 760 (Tex. App.—Texarkana 2005, pet. ref'd) ...... 19
*Garcia v. John Hancock Variable Life Inse. Co.*,
   859 S.W.2d 427, 435 (Tex. App.—San Antonio 1993, writ
   denied)............................................................................... 17, 21
*Gaston v. State*,
   641 S.W.2d 261 (Tex. App.—Houston 1982, no pet.) ............ 22
*Gray v. State*,
   1999 Tex. App. LEXIS 8213 (Tex. App.—Austin [3rd Dist.]
   Nov. 4, 1999, no pet.) (mem. op., not designated for
   publication) ............................................................................ 22
*Griffin v. Hale*,
   2010 Tex. App. LEXIS 6094 (Tex. App.—Eastland July 29,
   2010, no pet.) (mem. op.)......................................................... 9
*Hopkins v. State*,
   2003 Tex. App. LEXIS 1448 (Tex. App.—Fort Worth Feb. 13,
   2003, not pet.) (mem. op.)....................................................... 29
*Hull v. Vidaurri*,
   2010 Tex. App. LEXIS 424 (Tex. App.—Austin [3rd Dist.] Jan.
   22, 2010, pet. denied) (mem. op.) ........................................... 13

*Knox v. Donovan Lowery Ins. Agency*,
405 S.W.2d 160 (Tex. Civ. App.—Eastland 1966, no writ).... 14

*Laidley v. City of San Marcos*,
2011 Tex. App. LEXIS 7712 (Tex. App.—Austin [3rd Dist.]
Sept. 21, 2011, no pet.) (mem. op.).......................................... 14

*Lot 39 v. State*,
85 S.W.3d 429 (Tex. App.—Eastland 2002, pet. denied)........ 25

*Mauricio v. Castro*,
287 S.W.3d 476 (Tex. App. —Dallas 2009, no pet.)............... 14

*Mitchell v. Timmerman*,
2008 Tex. App. LEXIS 9710 (Tex. App.—Austin [3rd Dist.]
Dec. 31, 2008, no pet.) (mem. op.) .......................................... 13

*One 1991 Chevrolet Blazer v. State*,
905 S.W.2d 443 (Tex. App.—Amarillo 1995, no pet.)............ 13

*Parish v. State*,
939 S.W.2d 201 (Tex. App.—Austin [3rd Dist.] 1997, no
pet.)…. ...................................................................................... 20

*Parmer v. DeJulian*,
2008 Tex. App. LEXIS 6875 (Tex. App.—Tyler Sept. 17, 2008,
no pet.) (mem. op.)....................................................................... 9

*Perkins v. Groff*,
936 S.W.2d 661 (Tex. App.—Dallas 1996, writ denied)......... 13

*Plantation Prod. Props., L.L.C. v. Meeks*,
2004 Tex. App. LEXIS 8206 (Tex. App.—Waco Sept. 8, 2004,
no pet.) (mem. op.)...................................................................... 13

*Rodriguez v. Tinsman & Houser, Inc.*,
13 S.W.3d 47 (Tex. App.—San Antonio 1999, pet. denied) ... 14

*Seagraves v. City of McKinney*,
45 S.W.3d 779 (Tex. App.—Dallas 2001, no pet.)..................... 9

*Simmons v. Elmow Holdings, Inc.*,
2008 Tex. App. LEXIS 5199 (Tex. App.—Fort Worth July 10,
2008, pet. denied) (mem. op.) ............................................... 9, 16

*Slagle v. Prickett*,
345 S.W.3d 693 (Tex. App.—El Paso 2011, no pet.).............. 14

*State v. 2004 Lincoln Navigator*,
2014 Tex. App. LEXIS 9557 (Tex. App.—Corpus Christi Aug.
28, 2014, pet. filed) (mem. Op.)............................................... 20

*State v. Delagarza*,
158 S.W.3d 25, 28 (Tex. App.—Austin [3rd Dist.] 2005, no
pet.)…. ...................................................................................... 20

*State v. One Red 1988 Chevrolet Silverado*,
   2001 Tex. App. LEXIS 4018, at *5 (Tex. App.—Corpus Christi
   June 14, 2001) ....................................................................... 22
*Taylor v. Thompson*,
   4 S.W.3d 63 (Tex. App.—Houston 1999, pet. denied) ............ 13
*Weaver v. E-Z Mart Stores, Inc.*,
   942 S.W.2d 167 (Tex. App.—Texarkana 1997, no writ) ......... 16
*Windle v. Mary Kay, Inc.*,
   2003 Tex. App. LEXIS 5594 (Tex. App.—Dallas July 1, 2003,
   pet. denied) (mem. op.) ........................................................... 14

## FIFTH CIRCUIT CASES

*States v. Aguirre*,
   476 F. App'x 333 (5th Cir. 2012) ........................................... 25
*United States v. $92,203.00*,
   537 F.3d 504 (5th Cir. 2008) .................................................. 17
*United States v. Loftis*,
   607 F.3d 173 (5th Cir. 2010) .................................................. 25

## OTHER CASES

*People v. One 1939 La Salle 8 Touring Sedan*,
   45 Cal. App. 2d 709 (1941) ..................................................... 22
*People v. One 1941 Buick Club Coupe*,
   72 Cal. App. 2d 593 (1946) ..................................................... 22
*State v. One 1968 Buick Electra, Del. Reg. 43003*,
   301 A.2d 297 (Del. Super. 1973) ............................................ 22
*State v. One 1984 Toyota Truck*,
   311 Md. 171, 533 A.2d 659 (1987) ......................................... 28
*United States v. Ferro*,
   681 F.3d 1105 (9th Cir. 2012) ........................................... 30, 31
*von Hofe v. United States*,
   492 F.3d 175 (2nd Cir. 2007) ................................................. 30

## UNITED STATES CONSTITUTION

U.S. CONST. amend. VIII ................................................. III, 30, 31
U.S. CONST. amend. XIV ...................................................... 27, 30

**TEXAS CONSTITUTION**

TEX. CONST. art. I, §§ 3, 13, 19 ..................................................... 27
TEX. CONST. art. I, §13 ................................................................ 30

**TEXAS CODE OF CRIMINAL PROCEDURE**

TEX. CODE CRIM. PROC. ANN. arts. 59.01 ................................ VIII
TEX. CODE CRIM. PROC. ANN. art. 59.02 ................................ 2, 3
TEX. CODE CRIM. PROC. ANN. art. 59.04 ........................... VIII, 10
TEX. CODE CRIM. PROC. ANN. art. 18.06(b)....................... 7, 11, 16

**TEXAS FAMILY CODE**

TEX. FAM. CODE § 3.201(b)..................................................... 24, 26
TEX. FAM. CODE §3.201(c) ........................................................ 25
TEX. FAM. CODE §3.202(c) ............................................... 24, 25, 26

**TEXAS RULES OF CIVIL PROCEDURE**

TEX. R. CIV. P. 166a .................................................................. 17
TEX. R. CIV. P. 166a(f) .............................................................. 17

**OTHER AUTHORITIES**

Don Clemer and Ann B. White, Texas District & County
    Attorney Association, Guide to Asset Seizure and Forfeiture
    (2010) ............................................................................... 10, 15
Joseph W. McKnight, *Family Law: Husband and Wife*, 37 SW.
    L.J. 65 (1983) ......................................................................... 24

## REQUEST FOR ORAL ARGUMENT

TO THE HONORABLE COURT:

Appellant requests that oral argument be granted. Argument would benefit the Court because issues of first impression are involved, statutory and constitutional provisions that lack judicial interpretation are implicated, and the underlying circumstances may be easier understood verbally.

## STATEMENT OF THE CASE

This case primarily challenges a trial court's grant of summary judgment in favor of the State within a forfeiture suit under Chapter 59, Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. arts. 59.01-59.04. (For orders granting summary judgment, and denying motion for new trial, *see* Appendices A-1 and A-2 in Appellant's Original Brief.)

I. The trial court erred by granting summary judgment for Plaintiff because Defendant's evidence conclusively proved, or raised a fact issue on, every element of the statute of limitations defense.

II. The trial court erred by granting full and final summary judgment because all issues, claims, and defenses were not decided.

III. The trial court erred by granting summary judgment for Plaintiff because evidence supporting Plaintiff's summary judgment was incompetent and insufficient.

IV. Summary judgment was premature because the case was still developing, the state did not comply with discovery, evidence discovered after the trial court's order of summary judgment shows this, and Defendant was not provided a fair opportunity to investigate and develop the case—due to the fault of Plaintiff.

V. Summary judgment could not have been granted based on authorities analyzing a spouse's right to utilize an innocent owner defense because those authorities are wrong, and should be overruled.

VI. Summary judgment should not have been granted for Plaintiff for any other reason.

## STATEMENT OF FACTS

On March 5, 2014, a warrant issued for seizure of a 2004 Dodge truck and 2000 Buick sedan located at Mrs. Alcorn's residence, 624 N. Wilcox, Rockdale, Texas 76567. (I C.R. 302) Deputy Chris White's affidavit supporting the warrant alleged two instances (almost 14 and 8 months) before seizure when Mrs. Alcorn's husband used each vehicle to sell cocaine to a confidential informant. (*Id.* at 304) Deputy White said the events were documented on video. (*Id.* at 303-04)

Deputy White's search for registered owners of the vehicles found that James Rackley and Gill Shamsher were named on certificate of title. (I C.R. 303) Deputy White also claimed Mrs. Alcorn's husband was the owner of the vehicles, which were kept at the known residence of 624 N. Wilcox, and said neither Rackley nor Shamsher appeared to have "any claim to the vehicles in the previous year to present." (*Id.* at 304)

The next day, March 6, 2014, law enforcement seized the vehicles at Mrs. Alcorn's residence, 624 N. Wilcox, Rockdale, Texas 76567. (I C.R. 306) Before seizing the vehicles, law enforcement provided Mrs. Alcorn with a warrant, and return and inventory. (*Id.* at 228-29) Law enforcement also observed Mrs. Alcorn remove her personal items from each vehicle, and had her sign an inventory sheet describing those items, such as her *W.S.L.*

perfume, cell-phone plugs, house key, kids' medical papers, and other items. (I C.R. 225-31) Mr. Alcorn was not present because he was in the Milam County jail, where he had been for about a month. (*Id.* at 226, 308)

On March 18, 2014, the Milam County District Attorney filed a notice of seizure and intended forfeiture (i.e., the petition). (*Id.* at 5) Another affidavit by Deputy White was attached, which basically gave the same facts as the one sworn to before seizure. (*Id.* at 10-11) A *Schedule A* was also attached, and valued the the truck at $6,000, and the car at $3,000. (*Id.* at 53)

The State personally served James Rackley and Gill Shamsher at their residences, personally served Mr. Alcorn in jail, and later obtained judgments against each. (I C.R. 20, 22, 24; 28; 116; 351-353)

On May 28, 2014, eighty-two days after seizure, Mrs. Alcorn filed an answer even though she had not been served by any method. (I C.R. 26)

The State then moved for traditional and no-evidence summary judgment against Mrs. Alcorn. (I C.R. 38-43) First, the State argued that Mrs. Alcorn lacked standing to raise the innocent owner defense of Article 59.02(c), Texas Code of Criminal Procedure, because she was a spouse. (*Id.* at 38, 39) Next, it argued that (1) no evidence supported Mrs. Alcorn's ownership interest because those listed on certificate of title were presumed owners, and or (2) no evidence supported that Mrs. Alcorn had a reasonable

lack of knowledge that the vehicles would be used to commit actionable offenses. (I C.R. 39-43)

Mrs. Alcorn filed a verified amended answer, denied all allegations, denied that all conditions precedent were met, and asserted affirmative defenses (limitations, disproportional forfeiture, and innocent owner defenses under §§ 59.02(c) and (h)(1)(C)). (I C.R. 127) She also responded and objected to the State's motions, evidence, pleadings, discovery, and timing, and argued she was entitled to summary judgment. (*Id.* at 130-329)

Mrs. Alcorn submitted evidence along with her summary judgment motion and response, including an affidavit from James Rackley.

Rackley said he sold the truck to Mrs. Alcorn's husband in 2013, delivered title and transfer papers to Mrs. Alcorn at Meadowbrook Baptist Church, and had already informed the State about the transfer. (*Id.* at 223)

Mrs. Alcorn's affidavit said she drove both vehicles, paid for the Buick, and that, within a month before seizure, Officer Assaker saw her with the truck at a carwash after it was used to help friends move. (*Id.* at 226)

Mrs. Alcorn informed that the rims seized with the Buick were worth more than the values given on *Schedule A*, and that they had disappeared in police custody. (*Id.*) Mrs. Alcorn worked extra hours; her husband worked in his family's lawn business and various temp agency jobs, traded property,

sold property he fixed up, and financed vehicles, and had reasonable explanations about where he got money; her mother-in-law baby-sat her kids because she and her husband both worked; and she had no knowledge or belief that her husband used or sold drugs, or did so using any of their property, and, even if he did, she did not consent to it. (I C.R. at 226-27)

One hundred fifty two days after seizure (on August 6), the State amended its petition, added Mrs. Alcorn as a party, gave her address for service of process as 624 N. Wilcox, prayed she be cited to appear, and faxed a copy to her attorney. (I C.R. 331-33, 335, 336)

On August 27, the trial court sent a letter recognizing Mrs. Alcorn's standing, and her rights as an interest holder under the law, but said her affidavit did "not ring true," and that the State's motion would be granted. (I C.R. 347) Before judgment was granted, Mrs. Alcorn sent written requests to the court for clarification of the court's proposed decision, and, again, for rulings on responses and objections. (*Id.* at 349) Without responding, the trial court granted final summary judgment. (*Id.* at 351)

Mrs. Alcorn moved for new trial, renewed objections and requests, objected to the court's action and grant of final judgment, and presented new evidence she would have presented had there been sufficient time for discovery. (I C.R. Supp. 4-137)

Within Mrs. Alcorn's motion for new trial, Gill Shamsher's affidavit showed Mrs. Alcorn actually did pay $2,000 for the Buick. (I C.R. Supp. 88) An Eagle Automotive receipt showed improvements of $3,000 made to the Buick on August 5, 2013—roughly *seven months after* the alleged act. (*Id.* at 90) John Krause of Rockdale Auto Specialties gave an affidavit stating he "did paint and body work on the Alcorns' Buick" for a "total value of … $4,000." (I C.R. 357) A receipt from The Rim Shop in Austin showed rims seized with the truck were purchased for $1,800 on February 4, 2014—*six months after* the act alleged by the State. (*Id.* at 360)

More pictures and evidence of the missing rims seized with the Buick showed their value, and later disappearance from a highly secure impound area at the sheriff's office. (I C.R. 226, 230-31) (I C.R. Supp. 106-09)

Finally, the court was again informed of hardships and severe family sicknesses surrounding Mrs. Alcorn and her attorney; and the State's untimely service, unreasonably burdensome discovery tactics, failure to disclose evidence (like witnesses, parties, method of valuation, and disappearance of property), and unreasonable timing in moving for no-evidence summary judgment. (I C.R. Supp. 126-33) (I C.R. 173-80; 238-43).

Even so, the trial court denied her motion for new trial, and refused to rule on her objections for the third time. (I C.R. Supp. 138)

## SUMMARY OF REPLY POINTS

Mrs. Alcorn did not waive service under the limitations defense because she appeared more than 50 days after the limitation period expired.

The State served Mrs. Alcorn with copies of the warrant and inventory because she was an owner or person in possession of property that it seized; therefore, the State cannot fairly argue for the first time on appeal that it did not know Mrs. Alcorn was an owner or possessor. The State was required to explain its diligence in the trial court, but failed to do that, and cannot try to create a fact issue by explaining on appeal how its actions were diligent.

The State incorrectly assumes both that underlying facts support its affidavit, and that probable cause to believe property is contraband also means the property is, in fact, contraband.

The rule prohibiting spouses from using innocent owner defenses is not "well-settled." In fact, it is inconsistent with law. Spouses need those defenses to prevent inequitable results, and to level the playing field.

Finally, the State starts and ends with facts entirely absent from the record, and ignores problems with its motion and the trial court's judgment.

## I. REPLY POINTS

**A. THE STATE CONTINUES TO IGNORE RULES REGARDING SERVICE.**

Upon seizing Mrs. Alcorn's vehicles, the State served her with copies of a warrant, return and inventory, and had her sign an inventory log for personal items she removed from the vehicles. (I C.R. 228-231)

State agents must give a copy of the warrant to the owner or person in possession of the place where property is seized. TEX. CODE CRIM. PROC. art. 18.06(b). State agents must also sign and "present a copy of the inventory to the ***owner or other person in possession of the property***." *Id*.

Although the State served Mrs. Alcorn with a warrant and inventory, she was not served with suit.

Mrs. Alcorn first appeared on May 28, 2014. (I C.R. at 26) This was over 50 days *after* the Thirty-day limitations period ran on April 5, and 82 days from when seizure occurred on March 6. (*Id.* at 306)

Because Mrs. Alcorn appeared outside the limitations period, service was not waived. Because the State acknowledged Mrs. Alcorn's status by serving her a warrant and inventory, it cannot claim her status was unknown.

Thus, even using the State's interpretation, diligence was not shown because the State did not explain an 82-day-delay.

1. **Filing an answer does not waive service of process for purposes of the statute of limitations defense.**

Seizure occurred on March 6, 2014. (I C.R. 306) Appellant answered on May 28; over 50 days *after* the Thirty-day limitations period ran on April 5. (*Id.* at 26)

The State erroneously uses *$27,920.00 v. State* to advance a theory that a defendant waives service under the statute of limitations defense by appearing in suit. 37 S.W.3d 533 (Tex. App.—Texarkana 2001). First, *$27,920.00* mentions no statute of limitations defense or 30-day service requirement. Second, Yingling, the claimant in *$27,920.00*, did not lose because he generally appeared, but because he failed to show he had any interest in the property being forfeited. 37 S.W.3d at 537-38.

In fact, the Texarkana Court said that once Yingling showed himself to have an interest in the property, "he was a necessary party on whom service was required to be made, and without service there could be no binding judgment against him." *Id.* at 537. Thus, *$27,920.00* actually supports that the State would be responsible for properly serving Yingling if he proved his interest—even if it initially overlooked that interest.

Next, the State's theory confuses two concepts. Attacking service made outside the 30-day window differs from complaining over the "form, substance, or manner of service…" *$6453.00 v. State*, 63 S.W.3d 533, 535-

36 (Tex. App.—Waco 2001, no pet.) (distinguishing limitations defense from defective service). The 30-day service requirement goes to "timeliness of service. It relates to the *affirmative defense* of limitations." *Id.* at 536.

Here, Appellant attacks service under the 30-day limitations defense. For this purpose, appearing *after* the 30-day period does not waive service. *Griffin v. Hale*, 2010 Tex. App. LEXIS 6094, at *3 (Tex. App.—Eastland July 29, 2010, no pet.) (mem. op.) (finding no waiver when appearance occurred after limitations period); *$24,156.00 v. State*, 247 S.W.3d 739, 747 (Tex. App.—Texarkana 2008, no pet.) (same); *Simmons v. Elmow Holdings, Inc.*, 2008 Tex. App. LEXIS 5199, at *13 (Tex. App.—Fort Worth July 10, 2008, pet. denied) (mem. op.) (same); *Parmer v. DeJulian*, 2008 Tex. App. LEXIS 6875, at *9 (Tex. App.—Tyler Sept. 17, 2008, no pet.) (mem. op.) (same); *James v. Gruma Corp.*, 129 S.W.3d 755, 760-61 (Tex. App.—Fort Worth 2004, pet. denied) (same); *Seagraves v. City of McKinney*, 45 S.W.3d 779, 783 (Tex. App.—Dallas 2001, no pet.) (same); *cf. Baker v. Monsanto Co.,* 111 S.W.3d 158, 160-61 (Tex. 2003) (complaint about service barred when appearance made *within* limitations period).

Thus, giving full devotion to the State's interpretation, the State must prove that it used due diligence to effectuate service on Mrs. Alcorn because her first appearance was more than 50 days *after* the limitations period ran.

**2.**     **The State was not diligent because it was unquestionably aware that Mrs. Alcorn required service by citation, its actions speak louder than words, and, even then, its words are too late.**

As master of its suit, Plaintiff had to ascertain claims, discover those requiring service, and ensure proper execution of service. Mrs. Alcorn did not owe these duties, nor was she required to thrust herself into litigation for plaintiff's advantage, because, absent proper service, she did not need to participate at all. *Ross v. Nat'l Ctr. for the Empl. of the Disabled*, 197 S.W.3d 795, 797-98 (Tex. 2006) ("A party who becomes aware of the proceedings without proper service of process has no duty to participate in them." (quoting *Caldwell v. Barnes*, 154 S.W.3d 93, 97 n.1 (Tex. 2004)).

As such, the State had the duty to make diligent efforts to serve owners, interest holders, and possessors. Both the law and state publications place this responsibility on the State.[1] Thus, the State was not diligent in its attempts to serve Mrs. Alcorn because her possession of the vehicles was clearly observed through the eyes of multiple State agents. And, Mrs. Alcorn's other interests were known or constructively known, but even if some interest were unknown, due to lack of action or explanation or both, no evidence supports that the State diligently strived to make it known.

---

[1] TEX. CODE CRIM. PROC. art. 59.04(b), (c), and (j); Don Clemer and Ann B. White, Texas District & County Attorney Association, Guide to Asset Seizure and Forfeiture, at 7 (2010) (hereafter "**TDCAA Guide**").

### a. *The State knew Mrs. Alcorn was entitled to service by citation.*

The State's agents came to Mrs. Alcorn's house; took cars from her driveway; presented her with a warrant and inventory for those vehicles; observed her remove her personal items from each vehicle; had her sign an inventory for those items; and described those items on the inventory, such as her *W.S.L.* women's perfume, cell-phone plugs, house key, and kids' medical papers. (I C.R. 225-31)

Mrs. Alcorn's spousal status was undisputed, she signed the inventory with the name *Alcorn*, and easily available public records show the State had reason to know this status. (*Id.* at 311, 300, 298) (I C.R. Supp. 123) The State knew Appellant's husband was not in possession since it knew that he was in jail and that he had been there for almost a month. (I C.R. 308)

Mrs. Alcorn drove both vehicles, was seen by Officer Assaker in possession of the truck at a carwash in the month before seizure, paid money for the Buick, and none of this was challenged. (*Id.* at 226) (I C.R. Supp. 88)

At the very least, Plaintiff knew Mrs. Alcorn was in possession, and had inquiry notice that her interest may be more significant.

And, the State cannot claim Mrs. Alcorn was not in possession after it served her with a warrant and inventory as an *owner or person in possession of the property*. TEX. CODE CRIM. PROC. art. 18.06(b). (I C.R. 228-29)

Assuming the State did not know of Appellant's ownership interest, there is no valid excuse for failing to serve her because it served two people it knew *before seizure* claimed no interest in the vehicles. (I C.R. 217-18)

The State also irrefutably admitted *before seizure* and before filing suit that Mrs. Alcorn's husband owned both vehicles, which were kept at 624 N. Wilcox. (*Id.* at 217, 220) James Rackley (a neutral party, and one listed on certificate of title) also stated that he possessed no interest in the truck, delivered it to Mr. Alcorn, passed its title and transfer papers to Mrs. Alcorn, and relayed this to the State. (*Id.* at 223) Because the State served two people it knew had no interest *before seizure*, ignoring Mrs. Alcorn's interest—even if it did not think she had any interest—was not diligent.

But, the State did know, or is deemed to have known, of her interests. The State's amended petition "added Mrs. Alcorn as a statutory claimant" (State's Br. at 3, ¶ 1, ll. 2-3), and confirmed its awareness that she was entitled to service by citation at 624 N. Wilcox. (I. C.R. 332-33, 335)

For what it's worth, the trial court also found "Ms. Alcorn was entitled to the requisite rights provided any holder of interest under Chapter 59." (I C.R. 347-48)

## b. *The State failed to show diligence because it offered no explanation.*

Appellant answered on May 28, 2014 (I C.R. 26), which was 82 days from the day of seizure on March 6. (*Id.* at 306)

The State did not respond with any explanation of diligence it used to obtain service on Mrs. Alcorn; thus, the State was not diligent as a matter of law. *One 1991 Chevrolet Blazer v. State*, 905 S.W.2d 443, 445 (Tex. App.—Amarillo 1995, no writ) (holding diligence lacking as a matter of law when "no excuse is offered…"). *See also Hull v. Vidaurri*, 2010 Tex. App. LEXIS 424, at *17 (Tex. App.—Austin [3rd Dist.] Jan. 22, 2010, pet. denied) (mem. op.) (requiring plaintiff to "explain all gaps," show "diligent efforts", and explain efforts taken during the "allegedly improper gap."); *Mitchell v. Timmerman*, 2008 Tex. App. LEXIS 9710, at *20 (Tex. App.—Austin [3rd Dist.] Dec. 31, 2008, no pet.) (mem. op.) (discussing responsibility "to explain the delay."); *Plantation Prod. Props., L.L.C. v. Meeks*, 2004 Tex. App. LEXIS 8206, at *18-19 (Tex. App.—Waco Sept. 8, 2004, no pet.) (mem. op.) (plaintiff did not show diligence by failing to "explain the prior 57-day delay"); *Taylor v. Thompson*, 4 S.W.3d 63, 65 (Tex. App.—Houston 1999, pet. denied) (finding no diligence because party did not explain efforts taken in the 26 days after limitations period ran); *Perkins v. Groff*, 936 S.W.2d 661, 668 (Tex. App.—Dallas 1996, writ denied) (diligence lacking

where party did not explain 18-day delay); *Knox v. Donovan Lowery Ins. Agency*, 405 S.W.2d 160, 161 (Tex. Civ. App.—Eastland 1966, no writ) (no diligence for unexplained 8-day delay).

Further, the State's untimely attempt to explain its diligence on appeal still fails. The State only presents excuses about why it did not seek service instead of showing efforts taken to obtain service on Mrs. Alcorn. *Slagle v. Prickett*, 345 S.W.3d 693, 698 (Tex. App.—El Paso 2011, no pet.) ("plaintiff must explain what steps he took to obtain service, not explain why he did nothing."); *Laidley v. City of San Marcos*, 2011 Tex. App. LEXIS 7712, at *13 (Tex. App.—Austin [3rd Dist.] Sept. 21, 2011, no pet.) (mem. op.) (quoting *Slagle*); *Mauricio v. Castro*, 287 S.W.3d 476, 479 (Tex. App. — Dallas 2009, no pet.) (finding that plaintiff must "present evidence regarding the efforts that were made to serve the defendant." (citing *Proulx v. Wells*, 235 S.W.3d 213, 216 (Tex. 2007)); *Rodriguez v. Tinsman & Houser, Inc.*, 13 S.W.3d 47, 51 (Tex. App.—San Antonio 1999, pet. denied) (no diligence for 25 day delay after limitations date where "inactivity or complete failure to attempt service … was due to miscommunication."); *Windle v. Mary Kay, Inc.*, 2003 Tex. App. LEXIS 5594, at*6-7 (Tex. App.—Dallas July 1, 2003, pet. denied) (mem. op.) (attorney's affidavit negated diligence "[b]y failing to state what efforts counsel made to effectuate service").

The State searched for those named on certificate of title *before* seizing the vehicles, but never did any other search *after* this point. (I C.R. 304-05). There is no explanation for efforts taken during the 82-day gap from the seizure date to Mrs. Alcorn's appearance.

Both the law and the State's very own playbook contemplate that people who are not listed on certificate of title might still require service of process. The Texas District & County Attorneys Association guide on asset forfeiture says that one "could establish ownership of a vehicle, not titled in her name, by presenting evidence of a purchase contract and a disclaimer by the owner of record… Equitable owners could conceivably include unrecorded lienholders or contingent beneficiaries of gifts or trusts." [2]

The guide, like the statute, also says, "The owner of the property, any interest holder in the property, and persons in possession of the property at the time of seizure must be served by citation as per Article 59.04(b), (c), and (j)." [3] And, "when the possessor of the vehicle is not the recorded registered owner… the possessor must be separately served with citation." [4]

The State cannot claim it did not know the law. *Belleza-Gonzalez v. Villa*, 57 S.W.3d 8, 12 (Tex. App.—Houston 2001, no pet.) (agreement to

---

[2] TDCAA Guide, at 7.

[3] TDCAA Guide, at 31.

[4] *Id.* at 33.

delay service that was unenforceable under Rule 11 failed to explain "diligence to seek service of process"); *Weaver v. E-Z Mart Stores, Inc.*, 942 S.W.2d 167, 169-70 (Tex. App.—Texarkana 1997, no writ) (explanation of delay based on ignorance of law raises no fact issue as to diligence).

The State had 14 months to discover claimants for one vehicle, and 7 for the other; had another 30 days after seizure to ensure service; and had manpower and resources available from at least three law enforcement entities. (I C.R. 10-11) And, the State already knew that those listed on certificate of title claimed no interest. (*Id.* at 217-18) Thus, with all these resources, the State did not act prudently by performing one fruitless search.

The State also did not act diligently by ignoring Appellant's interest, especially after it served her with warrant and inventory as an *owner or person in possession of the property*. Tex. Code Crim. Proc. art. 18.06(b).

Therefore, by the State's theory, the State has no valid explanation because it made no efforts to procure issuance of citation or effect service on Mrs. Alcorn for at least 81 days. Under Appellant's view, service was never effected. *Simmons*, 2008 Tex. App. LEXIS 5199, at *14 (finding that plaintiff *"never* effected service" on defendant, and defendant did not waive right to service when it appeared after limitations period) (emphasis original)

**B. THE STATE'S EVIDENCE IS NOT COMPETENT FOR SUMMARY JUDGMENT.**

The State's failure to submit evidence in accordance with rules of summary judgment cannot be excused.[5] Deputy White's affidavit could not support summary judgment because it was impermissibly based on facts that were known and provided by out of court declarants.[6] Even then, Deputy White only said they were documented on unattached, unproduced videos.[7]

Also, the State must conclusively prove both (1) that probable cause exists to seize property believed to be contraband, and (2) that property is actually contraband. *State v. $90,235.00*, 390 S.W.3d 289, 293 (Tex. 2013).

Thus, the State did not prove probable cause to believe the vehicles were contraband, and it could not assume the same evidence also established that the vehicles were, in fact, contraband.

---

[5] Garcia v. John Hancock Variable Life Ins. Co., 859 S.W.2d 427, 435 (Tex. App.—San Antonio 1993, writ denied) ("The law in Texas is well settled that summary judgment is a harsh remedy which must be strictly construed.").

[6] TEX. R. CIV. P. 166a(f); Kerlin v. Arias, 274 S.W.3d 666, 668 (Tex. 2008) (finding summary judgment affidavit incompetent because "testimony about … out-of-court sources was hearsay" and not within affiant's knowledge). *See also* United States v. $92,203.00, 537 F.3d 504, 507-510 (5th Cir. 2008) (reversing summary judgment because investigator's affidavit was hearsay—based on what other officers told investigator—and, thus, not based on personal knowledge either).

[7] Natural Gas Clearinghouse v. Midgard Energy Co., 23 S.W.3d 372, 380 (Tex. App.—Amarillo 2000, pet. denied) (finding that hearsay statements in affidavits may not be made the basis of a summary judgment, and that supporting information found on unattached computer disk does not support summary judgment as a matter of law).

**1. The State did not conclusively prove probable cause because only unidentified declarants, lacking qualifications and support by independent corroboration, knew the determinative facts.**

The affidavit dealt with one (or two) confidential informant(s). (I. C.R. 10) Because the informant was confidential, and no facts demonstrated its veracity, the State's affidavit started off with two strikes against it.

Although no facts prove up past reliability, the State says probable cause was proven because the information was detailed. (State's Br. at 16.) It first boasts of the informant(s) having detailed knowledge about the alleged substances being cocaine. But that begs the question: how did the informant know? Was it a pro drug dealer, ex-cop, DPS, lab tech, or another known to knowledgeable officers? We don't know. The affiant never said.

The affiant never said any officer actually saw illegal drugs; only that an officer could identify Mr. Alcorn and his vehicle. (I. C.R. 10) The affiant never described any substance or packaging; never said if the informant(s) showed "cocaine" to an officer after the "sale"; never said if lab or chemical tests were done; and never gave an amount of money involved in any "sale".

The affiant never said that he saw any video showing illegal drugs; never referenced the location of any video(s); never attached any video(s); and never said whether any video(s) showing illegal drugs currently exist.[8]

---

[8] *Nat. Gas Clearinghouse, supra*, n.7 (finding affidavit insufficient for not attaching disk)

The State next claims the informant(s) arranged "multiple drug sales" that showed an on-going enterprise, and Mr. Alcorn's "modus operandi," which is (surprisingly argued to mean) that selling drugs from a vehicle at a given location is somehow unique or original. (State Br. at 17.)

However, this was not a case where one saw activity 24 hours ago. Only one act was alleged for each auto in a 14-month period. No other acts, legal or illegal, were alleged. The affiant never said why time, day, location, conduct, body language, and or circumstances made two interactions "drug sales" as opposed to friendly exchanges. The two events were in different locations, different vehicles, over six months apart, and at different times, thus, there is no indication of *on-going* crime or a *modus operandi*.

The affiant also had no personal knowledge of either act. No other acts, legal or illegal, inside or outside of the vehicles, were alleged. The affiant did not see any other acts, illegal drugs, or depictions of illegal drugs. The affiant never said who informed him of anything, whether he spoke to Lieutenant Clore, the informant(s), or read somebody's report or field notes. Thus, the affiant provided no independent corroboration—and that's strike three.[9]

---

[9] Elardo v. State, 163 S.W.3d 760, 766 (Tex. App.—Texarkana 2005, pet. ref'd) (although unnamed informant saw suspect view illegal material stored on suspect's computer in suspect's house in last 12 hours, described house, knew suspect very well,

**2. Existence of probable cause to believe property is contraband does not equally prove that the property is, in fact, contraband.**

The State claimed (without any discussion) that the same facts used to prove probable cause also prove contraband. (State's Br. at 17.) The State must conclusively prove each element because the analyses are different. *$90,235.00*, 390 S.W.3d at 293.

Right now, there is no indication that anyone, or any evidence, will positively identify illegal drugs. Because the affiant never said if any officer actually saw illegal drugs, only the confidential informant(s) may testify to this fact. What are the motives of the informant(s)? After 14 months, are witnesses (informants) dead, lacking memory, or still within reach? And,

and heard on several occasions that suspect kept illegal material, warrant's facts were insufficient to find "the 'reliable source' … reliable" and did not "contain any corroboration of the informant's information or other indicia of reliability."); Parish v. State, 939 S.W.2d 201, 204 (Tex. App.—Austin [3rd Dist.] 1997, no pet.) ("We do not think these scant facts [corroborating that defendant's motel room and car were properly identified by the informant] supplied a basis for the tip's reliability. They were ascertainable by anyone who Parish may have been in contact with; for example, he may have related them to the motel clerk when he registered for the room."). *Compare above cases with,* Flores v. State, 319 S.W.3d 697, 703 (Tex. Crim. App. 2010) (stating informer's tip that illegal drugs were at certain residence may have been insufficient by itself, but affiant independently corroborated tip with two garbage-can searches outside residence); Davis v. State, 202 S.W.3d 149, 156 (Tex. Crim. App. 2006) (informant tips were corroborated by crimestopper's tip, and affiant's smell of drugs emitting from house within last 24hrs); State v. Delagarza, 158 S.W.3d 25, 28 (Tex. App.—Austin [3rd Dist.] 2005, no pet.) (tip from anonymous informer of unknown reliability corroborated by officers' collection of paraphernalia from trash cans outside residence that field tested positive for cocaine). *See also* State v. 2004 Lincoln Navigator, 2014 Tex. App. LEXIS 9557, at *17-20 (Tex. App.—Corpus Christi Aug. 28, 2014, pet. filed) (mem. Op.) (finding no reasonable suspicion to support informant's tip, examining need for police to corroborate informant's information, and discussing *Davis v. State*, 989 S.W.2d 859, 865 (Tex. App.—Austin [3rd Dist.] 1999, pet. ref'd), where police provided insufficient corroboration of tip by merely confirming the description of the car and the occupants)).

what if no video exists? Even if it does exist, does it show illegal drugs? Right now, we do not know because the affiant never said that he watched it.

In other words, regardless of probable cause, the State still might not prove its case at trial.[10] If proof of probable cause also established contraband, the state could move for summary judgment whenever a judge granted a warrant because the officer's belief would be conclusive. This would violate the right to jury trial, and there would be no way to test the government's reasonable belief. This is not how our system is/was set up.

Appellant stands by all objections already made to the State's summary judgment evidence.

---

[10] *Garcia*, 859 S.W.2d at 435 ("summary judgment should not amount to a trial by deposition or affidavit, or be resolved by weighing the relative strength of the conflicting facts and inferences." (citing Gaines v. Hamman, 163 Tex. 618, 626, 358 S.W.2d 557, 562-63 (Tex. 1962)).

## C. *AMRANI-KHALDI* IS NOT 'WELL-SETTLED', IS CONTRARY TO LAW, AND OVERRULING IT WOULD ONLY LEVEL THE PLAYING FIELD.

*Amrani-Khaldi v. State* [11] is not "well-settled." (State's Br. at 18.) Of the few appellate cases referencing *Amrani-Khaldi's* rule, none analyze it, [12] and it is unessential to the holding in others. [13] *Amrani-Khaldi* also does not cite one Texas case or discuss any other case to support its rule. [14]

*Amrani-Khaldi* and *Gaston* are skeletal remains of once popular, but now outdated public policy rationales. For instance, innocent owners could not recover on insurance policies for property damage caused by a co-owner. [15] This rule prevented wrongdoers from benefitting via co-ownership, and the harsh result deterred insurance fraud by co-owners acting in collusion. [16]

---

[11] 575 S.W.2d 667 (Tex. Civ. App.—Corpus Christi 1978, no writ).

[12] Gray v. State, 1999 Tex. App. LEXIS 8213, at *5-7 (Tex. App.—Austin [3rd Dist.] Nov. 4, 1999, no pet.) (mem. op., not designated for publication); Bochas v. State, 951 S.W.2d 64 (Tex. App.—Corpus Christi 1997, no writ); Gaston v. State, 641 S.W.2d 261, 264 (Tex. App.—Houston 1982, no pet.).

[13] The *Gray* claimant was a party to the offense, and was not innocent. 1999 Tex. App. LEXIS 8213, at *5-6. In *Bochas*, a defendant-spouse's claim was subordinate to the claim of a non-spouse-buyer, who could not establish a right to relief; and the court merely referenced *Gaston, supra*, in a footnote, but entertained the defendant-spouse's appeal anyway. 951 S.W.2d at 67 n.2. *See also* State v. One Red 1988 Chevrolet Silverado, 2001 Tex. App. LEXIS 4018, at *5 (Tex. App.—Corpus Christi June 14, 2001) (mem. op., not designated for publication) (issue tried by consent).

[14] *Amrani-Khaldi*, 575 S.W.2d at 669 (citing People v. One 1939 La Salle 8 Touring Sedan, 45 Cal. App. 2d 709, 712 (1941); People v. One 1941 Buick Club Coupe, 72 Cal. App. 2d 593, 597 (1946); State v. One 1968 Buick Electra, Del. Reg. 43003, 301 A.2d 297 (Del. Super. 1973)).

[15] Kulubis v. Tex. Farm Bureau, 706 S.W.2d 953, 955 (Tex. 1986).

[16] *Id.*

---

Yet, strict application of such rules create results just as repugnant to public policy, like unjust enrichment to insurance companies;[17] divorce and partition of property merely to avoid "the possibility that the wrongdoing spouse might benefit";[18] and "the injustice of imputing one person's criminal acts to an innocent victim."[19]

Thus, "courts must also recognize that public policy may change over time."[20]

Furthermore, public policy rules cannot be created or upheld unless courts carefully construe "the constitution, laws, and judicial decisions."[21] "Courts are to derive public policy from existing law, not create it."[22]

Accordingly, courts cannot decline to apply a statutory remedy, but do just that by denying spouses the use of available statutory defenses to protect well-recognized property rights. Therefore, *Amrani-Khaldi's* rule cannot be sustained because it is contrary to law, and creates inequitable results.

---

[17] *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 674-75 (Tex. 2008) (Hecht, J., concurring) (citing *Kulubis*, 706 S.W.2d at 955).

[18] Texas Farmers Ins. Co. v. Murphy, 996 S.W.2d 873, 880-881 (Tex. 1999).

[19] *Fairfield Ins. Co.*, 246 S.W.3d at 674-75 (Hecht, J., concurring) (citing *Kulubis*, 706 S.W.2d at 955).

[20] *Id.* at 673.

[21] *Id.*

[22] *Id.*

1. ***Amrani-Khaldi*'s rule is unsupported by Texas law because no one incurred liability, there is no liability, and Mrs. Alcorn's community property cannot be forfeited merely due to the act of a spouse.**

The *Amrani-Khaldi* rule was formulated from § 5.61 (now §3.202(c)), Texas Family Code, expressing that a spouse's sole or joint management community property is subject to the liabilities incurred by the spouse before or during marriage. 575 S.W.2d at 668. Based on this provision, *Amrani-Khaldi* reasoned that, "community property is not exempt from forfeiture where such property is used by a spouse in such a manner as to contravene [forfeiture laws], even though such property is so used by one spouse without the knowledge or consent of the other spouse." *Id.* at 668-69.

However, the family code does not support the above rule. "[A] community debt means nothing more than that some community property is liable for its satisfaction." [23] Yet, "[e]xcept as provided by [§§ 3.201-03], community property is not subject to a liability that arises from an act of a spouse." TEX. FAM. CODE § 3.201(b). "A spouse does not act as an agent for the other spouse solely because of the marriage relationship." *Id.* §(c). And, these family code sections do not create liability.[24]

---

[23] Tedder v. Gardner Aldrich, LLP, 421 S.W.3d 651, 655 & n.21 (Tex. 2013) (quoting Joseph W. McKnight, *Family Law: Husband and Wife*, 37 SW. L.J. 65, 76-77 (1983) (discussing Tex. Fam. Code §3.202).

[24] *Tedder,* 421 S.W.3d at 655 n.21 (noting that "[§3.202] does not impose liability").

In this case, there "is not a forfeiture for the payment of the owner's debts." *Lot 39 v. State*, 85 S.W.3d 429, 432 (Tex. App.—Eastland 2002, pet. denied). There "is not a forfeiture for … the payment of the claims of creditors." *Id.* There is no tort liability, or needed compensation "to make someone whole for injury caused by unlawful use of the property." *Austin v. United States*, 509 U.S. 602, 625 (1993) (Scalia, J., concurring). There is nothing owed for "any damages sustained by society or … the cost of enforcing the law." *United States v. Ward*, 448 U.S. 242, 254 (1980).

And, there is not a forfeiture to pay criminal restitution or fines, or to "satisfy a criminal debt." *United States v. Aguirre*, 476 F. App'x 333, 335 (5th Cir. 2012) (explaining difference in *foreclosure* to pay criminal debt versus forfeiture; wife's interests in property could be *foreclosed* because her husband owed restitution (debt) that obligated her interest; *foreclosure* and forfeiture procedures are different; and no statutory excuse applied (citing *United States v. Loftis*, 607 F.3d 173, 178 (5th Cir. 2010) (explaining similar situation where statute made restitution a "*debt*")).

Therefore, there is no liability, no one owes anything, and no one is owed anything. Even so, Mr. Alcorn incurred no liability; therefore, none of Mrs. Alcorn's community property is subject to any liabilities incurred by Mr. Alcorn.  TEX. FAM. CODE § 3.202(c). And, Mrs. Alcorn's community

property is not subject to forfeiture merely because Mr. Alcorn's act gave rise to the forfeiture action because Mr. Alcorn is not her agent. TEX. FAM. CODE § 3.201(b) (unless specified by §§ 3.201-03, community property is "not subject to a liability that arises from an act of a spouse"); *id.* §(c) ("[a] spouse does not act as an agent for the other spouse solely because of the marriage relationship.").

Regardless, spouses still cannot be denied the use of a statutory remedy based on any of these family code provisions.

**2.** **Spouses should be able to use available statutory protections because doing so is consistent with law, prevents inequitable results, and only levels the playing field.**

### a. *Spouses cannot be barred from using available statutory remedies.*

Courts cannot prevent spouses from using the innocent owner defense because the statute makes that right available. The early privateering cases upholding forfeiture did not protect innocent owners, but they also did not treat joint ownership differently depending on the owners' marital status. [25]

If a statute does not include an innocent owner defense—it is true—, due process will not likely save an innocent's property. *Bennis v. Mich.*, 516 U.S. 442, 446 (1996) (discussing Michigan's statute and relevant authority).

But, the above cases, and the many like them, do not justify treating joint ownership differently depending on the owners' marital status.

When statutes make innocent owner defenses (or other protections) available, courts should not invent ways to deny their use to a particular class of individuals. Doing so violates the right to equal protection under the law. U.S. CONST. amend. XIV; and TEX. CONST. art. I, §§ 3, 13, 19.

Even if policy supports denying that right, that policy must be derived from the law at hand because the law "circumscribes judicial authority." [26]

---

[25] *Austin*, 509 U.S. at 612 (discussing law in privateering cases allowed forfeiture of the whole ship despite owners' innocence).

[26] *Fairfield Ins. Co.*, 246 S.W.3d at 673.

Besides, statutory defenses have been added since *Amrani-Khaldi*, and even this Court's opinion in *Gray*, and those statutory provisions do not limit the type of ownership interests protected.

Thus, all these reasons are why other state courts have said that older "Texas cases are probably no longer good law in view of statutory changes favoring the innocent owner defense." *State v. One 1984 Toyota Truck*, 311 Md. 171, 533 A.2d 659 (1987) (citing and discussing cases).

**b. *Spouses should be able to use innocent owner defenses in order to prevent inequitable results; and using such defenses would, at most, only give spouses the same advantages as other claimants.***

The State completely avoids that these two forfeitures took place roughly 14 and 8 months after the respective acts alleged. How much money was put into the property during that time? Again, the State should not be able to lie in wait for this long then swoop in to take a windfall after the spouse made improvements, or, like this case, took over purchase payments. (This argument is discussed at length in Appellant's Brief at 49-51.)

Next, there is no justifiable reason to treat unmarried-joint-owners differently. Why treat a wife differently than a fiancé, girlfriend, sister, mother, aunt, grandmother, best friend, business partner, bank, or other lienholder? Why draw a line at the spouse?

Again, the family code does not justify treating spouses differently because it—does not create *liability*. Courts had no reason to premise its rule on a family code section that does not even create liability. Even if this so-called "liability" exists, the family code does not justify denying spouses the use of an available statutory defense to that "liability."

When no defense exists, co-owned property is as forfeitable as a community property. Why exclude spouses when a defense actually exists? And, why does the family code support that exclusion?

Finally, allowing spouses to use innocent owner defenses would not make obtaining forfeiture against spouses virtually impossible. (State's Br. 18-19.) In fact, the defense would not be as strong for spouses as it is for other claimants. Banks, business lien-holders, and third-party lenders could mount stronger defenses than spouses because they are not as likely as spouses to be closely affiliated with the wrongdoer. *See Hopkins v. State*, 2003 Tex. App. LEXIS 1448, at *1 (Tex. App.—Fort Worth Feb. 13, 2003, not pet.) (mem. op.) (discussing situation where fiancé had no reasonable lack of knowledge).

**D. THE STATE STARTS AND ENDS WITH FACTS ENTIRELY ABSENT FROM THE RECORD, AND COMPLETELY IGNORES PROBLEMS WITH ITS MOTION AND THE TRIAL COURT'S JUDGMENT.**

**1.  No evidence of drug conviction, probation, or amount of drugs exists to analyze probable cause, contraband, or Eighth Amendment law.**

The record does not show Mr. Alcorn was on probation for anything; pleaded guilty to anything; pleaded true at any probation revocation; or any conviction or plea bargain or revocation was because he possessed illegal drugs. None of this was mentioned until on appeal. (State's Br. at 1, 17, 21.)

Thus, the State's analysis distinguishing Eighth Amendment[27] disproportionality cases from this case also fails because it was based on the existences of drug amounts and convictions and probation revocations that do not exist. (State's Br. at 19-21.) Furthermore, the State focused only on what Mr. Alcorn did, when it also has to focus on Mrs. Alcorn's interests, payments, culpability, circumstances, and history. *United States v. Ferro*, 681 F.3d 1105, 1115  (9th Cir. 2012) (trial court should not "focus solely on [husband] 's conduct and … fail to consider owner [wife]'s culpability" (discussing *von Hofe v. United States,* 492 F.3d 175, 178-79 (2nd Cir. 2007) (finding wife's interest could not be forfeited because she had less culpability than husband, whose interest in the property was forfeited);

---

[27] U.S. CONST. amend. VIII, XIV; and Tex. CONST. art. I, §13.

*Ferro*, 681 F.3d at 1117 (the *Constitution* requires consideration of the culpability of the property's owner).

However, even a single conviction does not prove or justify forfeiture of *two* vehicles.

**2.    Mrs. Alcorn did not plead affirmative defenses in bad faith.**

The record fails to show where the trial court "found that Mrs. Alcorn was not pleading affirmative defenses in good faith." (State's Br. at 4-5.)

**3.    The State avoids why we are here.**

The State has avoided the fact that its motion for summary judgment wholly revolved around Mrs. Alcorn's inability to assert the innocent owner defense of Article 59.02(c), and nothing else. Yet, the summary judgment grants full and final relief on all issues, claims, defenses, and even on the issue of no standing to contest anything.

Spouses may at least resist forfeitures by attacking seizure, proof of contraband, forfeiture under Eighth Amendment law, and service under the statute of limitations.

For that reason, if nothing else, the case should be reversed.

## III. PRAYER

Mrs. Alcorn is praying this Honorable Court reverse and render judgment that the statute of limitations bars forfeiture. Alternatively, Mrs. Alcorn prays this Honorable Court reverse and remand on all issues.

Respectfully submitted,

*Benton Ross Watson*

Benton Ross Watson
120 E. 1st Street / Box 1000
Cameron, Texas 76520
Tel: 1 (254) 307-8181
Fax: 1 (254) 231-0212
ross@texastopdefense.com
State Bar No. 24077591
Attorney for Appellant, LaToya Alcorn

## CERTIFICATE OF SERVICE

This is to certify that on May 12, 2015, a true and correct copy of the above and foregoing document was served on the Milam County District Attorney's Office by electronic transmission at jjohnson@milamcounty.net, and electronic transmission was reported as complete.

*Benton Ross Watson*

Benton Ross Watson

# CERTIFICATE OF COMPLIANCE WITH TEX. R. APP. P. 9.4
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4(i) because this brief contains **7,213** words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2.  This brief complies with the typeface requirements and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been produced on a computer in conventional typeface using WordPerfect X6 in Times New Roman 14 point font in the body of the brief and Times New Roman 12 point font in the footnotes.

3.  The electronic file is virus and malware free.

_____
(Signature of filing party)

   Benton Ross Watson
_____
(Printed name)

   Solo Practitioner
_____
(Firm)

   May 12, 2015
_____
(Date)

# BENTON ROSS WATSON
## ATTORNEY AT LAW
P.O. Box 1000 / 120 E. 1st Street
Cameron, TX. 76520
Tel: (254) 307-8181
Fax: (254) 231-0212

_____

May 12, 2015

Jeffrey D. Kyle
Clerk, Third Court of Appeals
P.O. Box 12547
Austin, Texas 78711-2547

RE:     Court of Appeals Number:     03-14-00704-CV
        Trial Court Case Number:     CV36,279

Style:  2004 Dodge Ram 1500 TX LP #CPL1988 and 2000 Buick TX…
        v.
        The State of Texas

Dear Mr. Kyle:

     I am filing my reply brief again. Apparently, some sort of technical problem removed all internal links and bookmarks, and caused error messages within the brief.

     If there are any problems or concerns, please let me know. Thank you for your patience, assistance, and immediate notification.

                Best wishes,

                Benton Ross Watson