STATE ex rel. The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Relator,

v.

Honorable John R. O'MALLEY, Judge, Circuit Court, Jackson County, Respondent.

No. 77453.

Supreme Court of Missouri, En Banc.

May 30, 1995.

John E. Tyler, III, Thomas S. Stewart, Douglas R. Dalgleish, Kansas City, for relator.

Charles Armbruster, M. Melinda Sanderson, Edwardsville, IL, for respondent.

THOMAS, Judge.

## FACTS

Charles Herriman filed suit against relator, The Atchison, Topeka, and Santa Fe Railway Company (Santa Fe), seeking damages under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, for personal injuries suffered while working for Santa Fe. After Herriman served his first set of interrogatories, Santa Fe objected to several of the requests. This dispute involves Santa Fe's objections, on work product grounds, to Interrogatories 3, 4, 6, and 21. Herriman filed a motion to compel Santa Fe to answer these four interrogatories. The trial judge overruled all of Santa Fe's objections and ordered Santa Fe to comply with the discovery requests. Santa Fe filed a petition seeking writs in prohibition and mandamus from this Court, and this Court issued preliminary writs in prohibition and mandamus. Writs made absolute. *Mo. Const. art. V, § 4.*

## DISCUSSION

The sole question presented is whether the information requested of Santa Fe encroaches upon its work product privilege. Prohibition is available to prevent disclosure of privileged material because an erroneous disclosure cannot be repaired on appeal. *State ex rel. Peabody Coal Co. v. Clark*, 863 S.W.2d 604, 608–09 (Mo. banc 1993).

## THE WORK PRODUCT DOCTRINE

The most important case in the evolution of the work product doctrine is the United States Supreme Court's seminal decision in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In considering the necessity of a "work product doctrine" to protect an attorney's mental impressions, conclusions, opinions, and legal theories, the *Hickman* Court wrote:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.... This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 510–11, 67 S.Ct. at 393.

Work product has evolved into a two-pronged doctrine that consists of both tangible work product (consisting of trial preparation documents such as written statements, briefs, and attorney memoranda) and intangible work product (consisting of an attorney's mental impressions, conclusions, opinions, and legal theories—sometimes called opinion work product).

The *Hickman* decision recognized that discovery of tangible work product will inevitably disclose the attorney's mental impressions, conclusions, opinions, and legal theories, and, therefore, must be protected. *Id.* at 509–10, 67 S.Ct. at 393. The decision also recognized, however, that, upon a showing of substantial need, the materials may be discoverable. *Id.* at 511–12, 67 S.Ct. at 394. The substantial need requirement applies only to tangible work product and does not apply to require disclosure of intangible work product.

Tangible work product is covered in Missouri by Rule 56.01(b)(3),[1] which codifies the substantial need rule from *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. It provides that a party may obtain discovery of documents and tangible things that are prepared in "anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and that the adverse party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Because Rule 56.01(b)(3) protects only documents or tangible things,[2] it has mistakenly been held

---

1. The Missouri Rule 56.01(b)(3) employs essentially the same language as Federal Rule of Civil Procedure 26(b)(3).

2. We also carefully note that Rule 56.01(b)(3) exists to protect the attorney's mental impressions, conclusions, opinions, and legal theories; it does not prevent the fact information contained in the document or tangible thing from

that the entire work product doctrine only protects those documents or tangible things protected by the rule. *See State ex rel. Krigbaum v. Lemon,* 854 S.W.2d 72, 73 (Mo. App.1993). As this statement ignores intangible work product, it is incorrect.

 Because Rule 56.01(b)(3) covers only tangible work product, this rule represents only half of the work product doctrine. The rule does not alter or abrogate the protections of intangible work product, which exist independently of Rule 56.01(b)(3). *See State ex rel. State Board of Pharmacy v. Otto,* 866 S.W.2d 480, 483 (Mo.App.1993). To the extent inconsistent with this opinion, *Krigbaum,* 854 S.W.2d 72, is overruled.[3]

### INTERROGATORIES 3, 4, AND 6

Interrogatories 3, 4, and 6 asked the following:

3. Have any statements or reports been obtained from any persons, including physicians or hospitals, regarding the occurrence or injuries described in Plaintiff's Petition?

4. If so, name the persons from whom statements or reports have been obtained, the date of said statements or reports, the number of said statements or reports, whether oral or written, to who said statements or reports were made and the location of said statement or reports at the present time.

6. State whether any statements were taken pertaining to the occurrence mentioned in Plaintiff's Petition, either signed or unsigned, recorded by court reporter or stenographer. If so, state:

(a) when said statements were taken;

(b) who took said statement;

(c) where said statements were taken;

(d) who was present at the time said statements were taken;

(e) who gave said statements; and

(f) who currently has possession of said statements.

Santa Fe complied in part with Interrogatories 3 and 6 by producing copies of medical records obtained and documents obtained from Herriman. In addition, Santa Fe identified all known fact witnesses and produced all statements from plaintiff and his physicians. Although Herriman did not request production of the witness statements themselves, Santa Fe objected to the balance of the above interrogatories because they sought information protected under the intangible work product privilege.

 To the extent the above interrogatories seek any information regarding oral interviews of persons contacted, they seek information that is clearly protected as intangible work product. *See Otto,* 866 S.W.2d at 483–84.

 As to written or recorded statements, we have no difficulty in understanding how the above interrogatories seek information that would, to some degree, reveal Santa Fe's attorney's mental impressions, conclusions, opinions, or legal theories. The broad interrogatories seek a schematic of the attorney's investigative process. In general, this schematic aides the other attorney not because it reveals facts relevant to the case, but because it reveals the investigative process and relative weight attributed to certain witnesses' statements by the opposing side. The work product doctrine applies to protect the requested information.

being discovered through other available means or upon a showing of substantial need.

**3.** The Krigbaum decision also erred in holding that the plain language of Rule 56.01(b)(1)— Scope of Discovery in General—mandates the disclosure of the existence, description, nature, and custody of witness statements. The rule states that a party "may obtain discovery regarding any matter, *not privileged,* which is relevant ... including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things ..." (emphasis added). This Court has long considered work product a privilege. *See State ex rel. Missouri Pub. Serv. Co. v. Elliott,* 434 S.W.2d 532, 536 (Mo. banc 1968). Tangible work product is provided for in Rule 56.01(b)(3), and the words "not privileged" from Rule 56.01(b)(1) incorporate into this section and subject all of the Missouri discovery law to the general principles of intangible work product. Rule 56.01(b)(1) does not, therefore, mandate disclosure of intangible work product.

Interrogatories 3, 4, and 6 do, however, ask for certain information that, as a practical matter, Santa Fe may be required to disclose. Santa Fe may have to divulge sufficient information regarding tangible witness statements, written or recorded, to allow Herriman to assess the applicability of any privilege that Santa Fe might claim under Rule 56.01(b)(3). That is, if Santa Fe claims a tangible work product privilege regarding tangible witness statements, Herriman must know which documents are claimed to be privileged and must have sufficient information to assess whether the claimed privilege is applicable to the document or tangible thing.

The Federal Rules of Civil Procedure now employ a mechanism for the disclosure of this information. Subsection 5 was added to Rule 26(b) in 1993 and provides:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed.R.Civ.P. 26(b)(5).

The Committee Notes on Use to the new subsection explain that the providing of the information necessary to determine the applicability of the claimed privilege should reduce the need for in camera examination of the documents. This promotes the ever-present aim of efficiency in the discovery process.

Further, the rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege. "Details concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected.…" Committee Notes on Use to Rule 26(b)(5).

■■■ Although as of yet there is no subsection in the Missouri Rules equivalent to the Federal Rule 26(b)(5), the justifications for the subsection are equally valid in Missouri's courts. Disclosure of information necessary to determine the applicability of a work product privilege promotes efficiency in the discovery process without encroaching seriously upon the attorney's mental impressions, conclusions, opinions, or legal theories. The disclosure of such information is required, however, only when a tangible work product privilege is claimed. Because the witness statements have not been requested of Santa Fe, it has claimed no work product privilege to the statements and need not answer the interrogatories. But, if the interrogatories accompany or follow a motion for production of the actual statements and Santa Fe claims a tangible work product privilege, then it must make the claim expressly and identify the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable the other party to assess the applicability of the privilege or protection.

### INTERROGATORY 21

Interrogatory 21 asked the following:

21. Please state whether Defendant company or its agents conducted any inquiry of any of the Plaintiff's co-workers of the occurrence mentioned in Plaintiff's Petition. If so, please state:

(a) by whom said inquiry was made;

(b) whether the co-workers completed a routine personal injury report; and

(c) whether the co-workers provided the Defendant with an oral or written statement.

■■■ Even though Santa Fe has already identified all known fact witnesses, this interrogatory asks who, among the co-workers, Santa Fe has interviewed. As stated previously, information regarding oral statements or inquiries is clearly protected as intangible work product. *See Otto*, 866 S.W.2d at 483–84. The disclosure of information regarding the existence of tangible witness statements or reports made by co-workers is covered by

this Court's ruling as to Interrogatory 6. Santa Fe is not required to answer Interrogatory 21.

### CONCLUSION

Writs made absolute.

COVINGTON, C.J., and HOLSTEIN, BENTON, LIMBAUGH and ROBERTSON, JJ., concur.

PRICE, J., not sitting.