LOT 39, SECTION C, NORTHERN HILLS SUBDIVISION, GRAYSON COUNTY, TEXAS, Appellant,

v.

STATE of Texas, Appellee.

No. 11–01–00244–CV.

Court of Appeals of Texas, Eastland.

Aug. 22, 2002.

David Stagner, Stagner & Corley, Sherman, for appellant.

Joseph D. Brown, Grayson County Atty., Cary McDougal, Cooper & Scully, Sherman, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

## Opinion

JIM R. WRIGHT, Justice.

The issue in this case is whether a homestead is protected from forfeiture in a proceeding brought by the State pursuant to TEX. CODE CRIM. PRO. ANN. art. 59.01 et seq. (Vernon Pamph. Supp. 2002)(hereinafter referred to as Chapter 59). The State sought the forfeiture of Lot 39, Section C, Northern Hills Subdivision, Grayson County, Texas. This property was Daniel Helm's homestead, and Helm asserted that it was exempt from forfeiture pursuant to TEX. CONST. art. XVI, § 50 and TEX. PROP. CODE ANN. § 41.001 (Vernon Supp. 2002). The trial court rejected Helm's contentions and ordered that his homestead be forfeited. In his sole issue on appeal, Helm argues that the homestead exemption precludes the forfeiture of his residence. We affirm.

The parties stipulated that Helm possessed methamphetamine at his house on two different occasions when search warrants were executed. Items used in the manufacture of methamphetamine were seized from within the residence, the shed, and the nearby field. These items included an Herlich Meyer flask, a substantial quantity of purified pseudoephedrine, denatured alcohol, acetone, about 27 empty pseudoephedrine bottles, a gallon sprayer, coffee filters that had been used to extract the pseudoephedrine, a set of triple beam scales, and a set of digital scales. Also seized were $1,535 in cash, several firearms and holsters, and a bulletproof vest. The evidence indicated that the extraction of the pseudoephedrine had occurred inside the residence.

Pursuant to Articles 59.01(2) and 59.02, "contraband" that is subject to forfeiture includes real property that is used or intended to be used in the commission of a felony under the Texas Controlled Substances Act. The evidence indicated that Helm's homestead was being used in such a manner.

The Texas constitutional provision declaring the exemption for homesteads is Article XVI, section 50, which provides:

The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, *for the payment of all debts*. (Emphasis added)

The statutory provision, Section 41.001, similarly provides that a homestead is "exempt from seizure *for the claims of creditors.*" (Emphasis added) The enumerated exceptions to these provisions are not applicable to the issue in this case but, rather, provide exceptions for debts such as purchase money and property taxes.

Although the issue in this case appears to be one of first impression in Texas, there are a few published opinions from Texas courts that indicate a homestead was forfeited pursuant to Chapter 59 because of drug-related activity. See *Romero v. State*, 927 S.W.2d 632 (Tex.1996); *Bochas v. State*, 951 S.W.2d 64 (Tex.App.-Corpus Christi 1997, writ den'd); *State v. One (1) Residence Located at 1204 North 12th Street, Alamo, Texas*, 907 S.W.2d 644 (Tex.App.-Corpus Christi 1995, no writ); *Ex parte Camara*, 893 S.W.2d 553 (Tex.App.-Corpus Christi 1994, pet'n ref'd). None of these cases, however, dealt with the homestead exemption. Nonetheless, there is one Texas case in which the court addressed the homestead exemption and held that it did not protect a homestead from public nuisance laws. *1018–3rd St. v. State*, 331 S.W.2d 450 (Tex.Civ.App.-Amarillo 1959, no writ). In *1018–3rd St.*, the court upheld the closing and padlocking of a house for a period of one year upon the finding that the house, which was the defendant's homestead, had been used in violation of the Texas liquor laws.

The parties in this case rely on caselaw from other states. The issue has been addressed in other states with similar homestead exemptions, and the outcomes are varied. Courts in Florida, Illinois, Iowa, Kansas, and Oklahoma have held that homesteads are protected from seizures and forfeitures based upon the occurrence of criminal offenses. *Tramel v. Stewart*, 697 So.2d 821 (Fla.1997); *Butterworth v. Caggiano*, 605 So.2d 56 (Fla.1992);

*People v. One Residence Located at 1403 East Parham Street*, 251 Ill.App.3d 198, 190 Ill.Dec. 573, 621 N.E.2d 1026 (1993); *In re Bly*, 456 N.W.2d 195 (Iowa 1990); *State, ex rel. Braun v. Tract of Land in Northwest Quarter of Section Four, Township Eleven South, Range Nineteen West of the 6th P.M., Ellis County*, 251 Kan. 685, 840 P.2d 453 (1992); *State ex rel. Means v. Ten (10) Acres of Land*, 877 P.2d 597 (Okla.1994). Courts in Arizona, Colorado, and Washington have held that their respective homestead exemption applies to protect homesteads from forced sales arising from the owner's debts but does not apply to protect homesteads from forfeitures brought about by the owner's use of the property to conduct criminal activity. See *In re Parcel of Real Property known as 1632 N. Santa Rita, Tucson*, 166 Ariz. 197, 801 P.2d 432 (Ct.App.1990, review den'd); *People v. Allen*, 767 P.2d 798 (Colo.Ct.App.1988); *Tellevik v. Real Property Known as 6717 100th Street S.W., Located in Pierce County*, 83 Wash.App. 366, 921 P.2d 1088 (1996), *review den'd*, 133 Wash.2d 1029, 950 P.2d 476 (1998).

We find the reasoning of the courts in Arizona, Colorado, and Washington to be persuasive. We note that Helm's reliance on the cases from Florida, Illinois, Iowa, and Kansas is misplaced because the homestead provisions in those states contain broader exemption language than the Texas provisions and are, therefore, distinguishable. In Florida, homesteads are exempt from forced sale under process of any court. In Illinois, homesteads are exempt from attachment or judgment for the payment of debts or other purposes. In Iowa, homesteads are exempt from judicial sale unless there is a special statutory declaration to the contrary. In Kansas, homesteads are exempt from forced sale under any process of law. In none of those states is the homestead exemption limited to seizures based upon the owner's

debts. We concede, however, that the homestead exemption in Oklahoma is limited to seizures based upon the owner's debts and that the homestead provision is not distinguishable from ours. However, we disagree with the Oklahoma court's holding in *State ex rel. Means* in which the court disregarded the limiting language of the homestead provision and held that the homestead was protected and that the homestead exemption was not limited to forced sales for the payment of debts.

 Although conscious that the homestead exemption is to be construed liberally[1] and that forfeiture statutes are to be strictly construed in a manner favorable to the person whose property is being seized,[2] we do not believe the homestead exemption can be construed to protect Helm's homestead from foreclosure in this case. The Texas constitutional and statutory provisions pertaining to the homestead exemption specifically indicate that homesteads may not be seized or subjected to forced sales for the payment of the owner's debts or the claims of creditors. The forfeiture of real property based upon the owner's use of that property to conduct criminal activity, such as the manufacture or delivery of methamphetamine, is not a forfeiture for the payment of the owner's debts or the claims of creditors.

The court in *1018-3rd St.* recognized that the Texas homestead exemption was created as a direct result of the loss to creditors of numerous homestead farms during the depression. The court stated that the purpose of the homestead exemption was to preserve the integrity of the family and to provide the debtor with a home and a means to support his family.

We find the following language to be instructive:

> Neither in this history, nor in any reliable Texas case book authority, do we find even a suggestion that our forebearers conceived of a homestead exemption for the purpose of erecting a barrier behind which criminals might ply their trades while thumbing their noses at law enforcement officers diligently and sincerely seeking to enforce prohibitions residents of the area had expressed a desire for at the ballot box.

> Therefore, since it seems apparent that our statutes which make provisions for the action taken herein do not except homesteads and the constitution of Texas does not prohibit such statutory authority we see no good reason why a homestead should protect persons in such operations as the evidence shows were being conducted in this case.

*1018-3rd St. v. State,* supra at 454. Likewise, we hold that the homestead exemption does not protect a homestead from being seized or forfeited under Chapter 59. Helm's sole issue on appeal is overruled.

The judgment of the trial court is affirmed.

1. See *Andrews v. Security Nat. Bank of Wichita Falls,* 121 Tex. 409, 50 S.W.2d 253, 256 (1932); *Woods v. Alvarado State Bank,* 118 Tex. 586, 19 S.W.2d 35 (1929).

2. See *State v. Lot 10, Pine Haven Estates,* 900 S.W.2d 400, 402 (Tex.App.-Texarkana 1995, no writ); *State v. Young's Market Company,* 369 S.W.2d 659, 662 (Tex.Civ.App.-Eastland 1963, writ ref'd n.r.e.).