Brennan argues that the documents at issue are not subject to attorney-client privilege. First, he claims any privilege was impliedly waived by the deposition testimony of Shelter employee and corporate representative Connie Morley. Second, he says privilege does not apply because the requested documents were created in the ordinary course of business. Third, Brennan says the documents are not privileged because, as part of the claims file, they are Brennan's property. Finally, he asserts that the documents *481 are not attorney work product and are thus not privileged.
Waiver
"Although the privilege may be waived, such waiver must be voluntary." Behrendt , 337 S.W.3d at 729. "For example, anticipatory waiver of the attorney-client privilege may occur where the client places the subject matter of the privileged communication in issue in the litigation." Id. (internal quotation omitted). "This commonly arises when a party claims reliance on legal advice as an element of a claim or defense." Id. (internal quotation omitted).
"Missouri courts have found waiver to exist in a number of circumstances, and the 'at issue' waiver is prominent among them." State ex rel. St. John's Reg'l Med. Ctr. v. Dally , 90 S.W.3d 209, 215 (Mo. App. S.D. 2002). "The 'at issue' waiver has been described as occurring when the privilege holder makes assertions in a litigation context that put its otherwise privileged communications in issue." Id. (internal quotation omitted).
"Privilege may also be waived when invoked in some fundamentally unfair way." Id.
The so-called "fairness doctrine" is grounded in the notion that it is unfair to permit a party to make use of privileged information as a sword when it is advantageous for the privilege holder to do so, and then as a shield when the party opponent seeks to use privileged information that might be harmful to the privilege holder.
Id. "The rationale is that a party should not be able to use a privilege to prejudice an opponent's case or to disclose some selected communications for self-serving purposes." Id. "Accordingly, a privilege may be waived when a party asserts a claim that in fairness requires examination of protected communications." Id. "Without calling it the 'fairness doctrine,' Missouri courts apply its rationale when analyzing privilege waiver issues." Id.
Brennan argues that Connie Morley ("Morley"), Shelter's Senior Litigation Attorney and a corporate representative, placed the privileged documents at issue when she testified during her deposition that Shelter's decisions regarding whether to accept or reject Browns' settlement offers and whether to sign or not sign 537 agreements was made on the reliance of the advice of outside counsel and that of Morley's supervisor, Mark Jones. Brennan essentially argues that if Shelter is going to use the advice of counsel as a defense for their actions that such advice must now be produced.
While being cross-examined during her deposition, Morley asserted that Shelter relied on advice of counsel. "[A] waiver extorted under cross-examination is not voluntary." Behrendt , 337 S.W.3d at 729 (internal quotation omitted). "Likewise, disclosure in response to an adverse party's discovery inquiry is not voluntary." Id. (internal quotation omitted).
Additionally, Shelter is not asserting reliance on advice of counsel as an affirmative defense. She said Shelter received advice of counsel prior to deciding not to sign the settlement agreement. But, that was not the sole reason Shelter declined to sign the settlement agreement. Morley testified that they did not sign for other reasons, including that it required Brennan to do certain things or the contract would not actually limit recovery and it required Shelter to give up any defense it would have to use the document as evidence in any case against it. This is not a case where a defendant is attempting to use a vague reference to privilege to avoid having to explain their failure to settle. The *482 brief excerpt of Morley's testimony, given in the context of being cross-examined in a deposition, wherein she said advice of counsel was a part of why Shelter chose not to settle does not amount to a waiver of privilege under Missouri law.
Brennan relies on cases from other jurisdictions in support of his claim that Shelter waived privilege through this deposition testimony. He says that Shelter does not have to plead privilege as an affirmative defense for a waiver to occur in a bad faith refusal to settle case. He argues that it is instead implied.
In Hearn v. Rhay , 68 F.R.D. 574, 581 (E.D. Wash. 1975), the United States District Court for the Eastern District of Washington set forth three criteria that must be met to find an implied waiver of attorney-client privilege:
(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.
Brennan relies on State Farm Mut. Auto. Ins. Co. v. Lee , 199 Ariz. 52, 13 P.3d 1169 (2000). That case applied the Hearn test but found that an "affirmative act" could be implied:
Thus, we agree with the court of appeals that before a waiver can be implied, a Hearn -like requirement of an affirmative act of putting the privileged materials at issue is necessary. We also agree that mere denial of the allegations in the complaint, or an assertion that the denial was in good faith, is not an implied waiver. But in this case, State Farm advances its own interpretation of the law as a defense, including what its employees knew ... in making that evaluation. True, State Farm does not claim that it rejected the stacking claims because of its lawyers' advice, but it does not deny that what its employees knew included information from the lawyers.
Id. at 1175 (internal citations omitted).
Lee , an Arizona case, takes the majority rule and broadens it by allowing an affirmative act to be implied. The resulting application of such a rule would mean that an insurance company would always waive privilege if it ever consulted an attorney because the attorney's counsel would likely form at least part of the basis for the insurance company's behavior. An insurance company would never be entitled to attorney-client privilege in cases of bad faith settlement, even if the attorney's advice was but a part of the information the insurance company used in its decision making process.
Missouri has been clear about a preference for protecting "the sanctity of the attorney-client privilege." Peabody Coal Co. , 863 S.W.2d at 607. The Missouri Supreme Court has said:
As long as our society recognizes that advice as to matters relating to the law should be given by persons trained in the law-that is, by lawyers-anything that materially interferes with that relationship must be restricted or eliminated, and anything that fosters the success of that relationship must be retained and strengthened. The relationship and the continued existence of the giving of legal advice by persons accurately and effectively trained in the law is of greater societal value ... than the admissibility of a given piece of evidence in a particular lawsuit. Contrary to the implied assertions of the evidence authorities, the heavens will not fall if all relevant and competent evidence cannot be admitted.
*483 State ex rel. Great American Ins. Co. v. Smith, 574 S.W.2d 379, 383 (Mo. banc 1978) (internal quotation omitted). We decline to apply an Arizona case in contravention of these Missouri legal principles.
Ordinary Course of Business
Brennan next argues that privilege should not apply because the attorney was merely acting as a part of the claims department at the time advice was given. He points to several cases from other jurisdictions which hold: "To the extent that the attorney acted as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege would not apply." Harper v. Auto Owner's Ins. Co. , 138 F.R.D. 655, 671 (S.D. Ind. 1991) ; see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. TransCanada Energy USA, Inc. , 119 A.D.3d 492, 493, 990 N.Y.S.2d 510 (2014) ("Documents prepared in the ordinary course of an insurer's investigation of whether to pay or deny a claim are not privileged, and do not become so merely because [the] investigation was conducted by an attorney" (internal quotation omitted)).
An in camera review of the documents reveals that these cases are not applicable to this case. The attorney Crawford was hired specifically to represent Shelter as opposed to being hired to represent or work on the underlying claims against Brennan. He was not acting in the ordinary course of Shelter's business of adjusting a claim. Instead, the attorney was retained specifically to protect Shelter's interests as settlement negotiations occurred. The attorney was not acting as a claims processor or an adjuster.
Brennan's Property
Brennan next asserts that all of the documents in Shelter's claim file belong to him pursuant to Grewell v. State Farm Mut. Auto. Ins. Co. , 102 S.W.3d 33 (Mo. banc 2003). In Grenwell , the court acknowledged "an insured's right of access to his or her liability insurance claims file." Id. at 37. Grenwell , however, did not involve a claim of attorney-client privilege. It holds that an insured is entitled to his or her claims file but does not hold that the entitlement to the file extends to documents protected by privilege.
Brennan cites a case from Washington in support of his argument. The court in Hawthorne v. Mid-Continent Cas. Co. , No. C16-1948RSL, 2017 WL 2363740, at *1 (W.D. Wash. May 31, 2017), noted "that Washington law establishes an exception to the attorney-client privilege in the context of certain insurance bad-faith claims." "[T]here is a presumption in such cases that the attorney-client privilege does not apply as between an insured and her insurer in the claims adjusting process." Id. "The insurer can rebut the presumption by showing that a particular communication or document had nothing to do with the insurer's quasi-fiduciary functions (e.g. , investigating, evaluating, negotiating, or processing the claim)." Id. "To the extent the insurer is able to show that documents in the claim file seek or reflect legal advice regarding the insurer's own liability under the policy, those documents are not subject to the presumption and remain privileged under state law." Id. "Even with regards to these documents, however, the insured may pierce the privilege by showing a foundation in fact for her allegation of bad faith." Id. "If the insured is able to make a colorable showing that the insurer attempted in bad faith to defeat a meritorious claim for coverage, the privilege is waived, and the entire claim file must be produced." Id.
Missouri does not have a statute waiving attorney-client privilege in the context of *484 insurance bad faith claims. Moreover, Brennan's argument would fail even under the Washington standard. Our own in camera review of the documents in dispute shows that they relate to Shelter's own liability and are therefore protected by attorney client privilege.
Attorney Work Product
Brennan's last claim is that the documents at issue are not privileged as attorney work product. "Rule 56(b) governs the scope of discovery." State ex rel. Ford Motor Co. v. Westbrooke , 151 S.W.3d 364, 366 (Mo. banc 2004). "In general, '[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action....' " Id. (quoting Rule 56.01(b)(1)).
Subject to the rule governing expert witnesses, "documents and tangible things otherwise discoverable under Rule 56.01(b)(1)" that were "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative" may be discovered "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and that the adverse party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."
Id. (quoting Rule 56.01(b)(3)). Brennan argues that he has substantial need of the requested documents and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means.
"The exception codified in Rule 56.01(b) is known as the 'work product privilege,' or the 'work product doctrine.' " Id. at 367. "The work product privilege precludes an opposing party from discovering materials created or commissioned by counsel in preparation for possible litigation." Id. "The doctrine generally protects 'both tangible work product (consisting of trial preparation documents such as written statements, briefs, and attorney memoranda) and intangible work product (consisting of an attorney's mental impressions, conclusions, opinions, and legal theories-sometimes called opinion work product)' from disclosure." Id. (quoting State ex rel. Atchison, Topeka and Santa Fe Ry. Co. v. O'Malley, 898 S.W.2d 550, 552 (Mo. banc 1995) ).
"Work product is distinguishable from attorney-client privilege." Id. at 366 n.3. "While the attorney-client privilege protects disclosures by the client to the attorney and is absolute in all but the most extraordinary situations, work product 'is designed to prevent a party from reaping the benefits of his opponent's labors ... for the same or a related cause of action.' " Id. (quoting State ex rel. Friedman v. Provaznik, 668 S.W.2d 76, 80 (Mo. banc 1984) ). As discussed, supra , the documents at issue are protected by attorney-client privilege. Thus, Brennan's argument that they are not protected as work product is inapplicable.
Conclusion
For the reasons stated above, we find that the Browns and Brennan are not entitled to unredacted production of the documents at issue because they are protected by the attorney-client privilege. Shelter has not affirmatively waived its privilege. The documents produced for in camera review shall be produced but only in their redacted form. To the extent that Shelter's petition for writ of prohibition seeks prohibition of future documents not yet requested we decline to issue such an advisory opinion. The writ in all other respects is denied. The stay on the proceedings is lifted.
Witt, J. concurs
Mitchell, K. concurs